NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEVON K. FLOYD,** : | |
| : | |
| **Plaintiff,** : | |
| v. : | **CIV. ACTION NO. 09-6381 (ES)** |
| : | |
| **UNIVERSITY OF MEDICINE AND** : | |
| **DENTISTRY OF NEW JERSEY** : | |
| : | |
| **Defendant.** : | |

**SALAS, District Judge.**

This matter comes before the court on Defendant University of Medicine and Dentistry of New Jersey's ("UMDNJ") motion for summary judgment to dismiss Plaintiff Devon K. Floyd's ("Plaintiff") gender-based reverse discrimination claim. (Dkt. No. 29). Plaintiff opposes the motion. The Court did not hold oral argument. Fed. R. Civ. P. 78. For the following reasons, UMDNJ's motion for summary judgment is GRANTED and Plaintiff's claim is dismissed with prejudice.

**I.     Factual & Background**[1]

Plaintiff is a male Environmental Services worker employed by UMDNJ. On or about April 7, 2009, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that he was discriminated against based on his gender. On November 23, 2009, the EEOC sent Plaintiff a dismissal and notice of right to sue.

---
[1] The following facts are taken from Plaintiff's complaint unless otherwise noted.

1

On or about December 17, 2009, Plaintiff filed the present action, alleging that UMDNJ discriminated against him because of his sex.[2]

## II.     Standard of Review

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

---

[2] Plaintiff's form complaint alleges that "[o]n January 27, 2009, the staff was informed that due to the inclement weather coverage is necessary. I, along with other Male employees went outside to complete our duties. My Female coworkers remained inside and did not complete any of the required duties. No form of discipline was issued towards the Female coworkers."

2

In the present case, Plaintiff appears *pro se*. As such, the Court must apply a more liberal standard of review to Plaintiff's claims. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also United States ex. rel Montgomery v. Brierley*, 414 F.2d 552 (3d Cir.1969) (stating that *pro se* petitions should be liberally construed).

### III. Discussion

A liberal construction of Plaintiff's complaint yields two allegations of gender-based reverse discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq..[3] First, Plaintiff alleges that male employees–but not female employees–are required to shovel snow. Second, Plaintiff alleges that male employees–but not female employees–receive disciplinary notices for failing to report to, or remain at, work on inclement weather days.

In the standard Title VII action, courts apply the burden-shifting analysis developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In reverse discrimination matters, however, the Third Circuit applies a modified burden shifting. *See Iadimarco v. Runyon,* 190 F.3d 151. (3d Cir. 1999). Under this analysis, a plaintiff must first establish a prima facie case of discrimination by presenting sufficient evidence to allow a fact finder to conclude that the defendant treated some people less favorably than others based on gender. "[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his race,

---

[3] Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer-(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

color, religion, sex, or national origin.'" *Iadimarco*, 190 F.3d at 163 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).[4]

Next, if the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production–but not the burden of persuasion–shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See Simpson v. Kay Jewelers Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998); *see also Corbett v. Sealy*, 135 Fed. App'x 506, 509 (3d Cir. 2005) (explaining the standard for the purposes of the *Iadimarco* reverse discrimination scenario). The defendant can satisfy this burden by offering evidence of a nondiscriminatory reason for its action. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (noting that the employer's burden to articulate a legitimate, nondiscriminatory reason is "relatively light.").

Finally, if the defendant offers a legitimate, nondiscriminatory reason for the challenged conduct, the plaintiff has the burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination. *See Jones v. Sch. Dist. of Philadelphia.*, 198 F.3d 403, 410 (3d Cir. 1999). In order to show pretext, the plaintiff must martial "some evidence, direct or circumstantial, from

---

[4] UMDNJ cites to *Murray v. Thistledown Racing Club, Inc*., 770 F.2d 63 (1985) for the proposition that a prima facie case of reverse discrimination is established only upon a showing that "background circumstances support the proposition that the defendant is the unusual employer who discriminates against the majority, and upon a showing that the employers treated employees differently who were similarly situated but not members of the protected group." *See* Pl.'s Mv'ing Br. at 12-13. However, over a decade ago in *Iadimarco* the Court of Appeals for the Third Circuit rejected this articulation. ("We now reject the 'background circumstances' analysis set forth in *Parker*, *Harding*, and their progeny [including *Murray*]." Today, the proper articulation of the test for a prima facie case in the context of "reverse discrimination" – and the one applied to the facts of this case – is as follows: has the plaintiff presented sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII? *See Iadimarco*, 190 F.3d at 161.

which a fact finder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 166.

1. **The Prima Facie Case**

Turning to the facts of this case, Plaintiff has not established a prima facie case of reverse gender discrimination with respect to either of his related, but distinct, allegations of reverse gender discrimination. The Court will now address both allegations in turn.

    a. **Snow Removal**

Given the totality of the circumstances, Plaintiff does not present "sufficient evidence" from which a fact finder could conclude that, based on gender, UMDNJ requires male Environmental Services workers to shovel snow, but does not require female Environmental Services workers to do so. *Iadimarco*, 190 F.3d at 163. In support of this allegation, Plaintiff directs the Court to the depositions of his fellow UMDNJ employees Tyrone Bodison and Marco Turner. Plaintiff does not, however, identify the exact testimony that he contends supports his claim, but rather refers to the depositions in their entirety. In responding to a properly pled motion for summary judgment, the burden lies on Plaintiff to identify evidence which supports or provides better context for each of Plaintiff's allegations, and to bring such evidence to the Court's attention. It is not the Court's responsibility to sift through Plaintiff's submissions in an attempt to find evidence which supports or provides better context for each of Plaintiff's allegations. *See, e.g., Albrechtsen v. Board of Regents of University of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (It is not a judge's roll to search through the record for evidence in support of a given claim). That being said, and in light of Plaintiff's *pro se* status, the Court has

thoroughly reviewed the deposition transcripts of Mr. Bodison and Mr. Turner and finds that they do not raise Plaintiff's allegation beyond the speculative level. Both Mr. Bodison and Mr. Turner are UMDNJ employees and participated in the January 27, 2009 snow removal. While Mr. Bodison and Mr. Turner testified that they did not witness female Environmental Services workers shoveling snow, they also testified that it was possible that female employees *did* shovel snow. *See* Pl.'s Opp'n Br., Ex. H, Dep. of M. Turner at pp. 7 - 8 & Ex. I, Dep. of T. Bodison at p. 8. Even when construed in the light most favorable to Plaintiff, testimony which admits the possibility that female employees are required to shovel snow cannot support Plaintiff's claim that female employees are not required to shovel snow. *See Ridgewood*, 172 F.3d at 252 (the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment).

Plaintiff has failed to offer specific facts that establish a genuine issue of material fact the male employees are treated differently than female employees based on gender, rather than just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In sum, Plaintiff has failed to meet his burden by going beyond unsupported assertions, bare allegations, or speculation. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). And, even when considering all facts and their reasonable inferences in the light most favorable to Plaintiff, this Court finds that he has not presented "sufficient evidence" from which a fact finder could conclude that, based on gender, UMDNJ requires male Environmental Services workers to shovel snow, but does not

require female Environmental Services workers to do so. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).[5]

Because Plaintiff has failed to establish a prima facie case of reverse gender based discrimination, his claim as it pertains to snow shoveling fails as a matter of law and this Court need not engage in the pretext phase of the *McDonnell Douglas* analysis.

### b. Disciplinary Notices

Given the totality of the circumstances, Plaintiff does not present "sufficient evidence" from which a fact finder could conclude that, based on gender, UMDNJ issues disciplinary notices to male employees who fail to remain at, or report to, work for snow removal, but does not issue disciplinary notices to female employees who fail to remain at, or report to, work for snow removal. *Iadimarco*, 190 F.3d at 163.

Plaintiff asserts that he was disciplined for failing to report to duty but that his female coworkers were not disciplined for the same conduct. *See* Compl. ¶ 9 ("I feel if it was declared a state of emergency then every Environmental Services Worker that was scheduled off should have got one of these notifications."). Here, again, Plaintiff fails to direct the Court to specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Instead, Plaintiff continues to improperly rely upon the mere allegations of his complaint.

---

[5] Moreover, Plaintiff does not contest the testimony of multiple female employees that they *do* shovel snow on Inclement Weather Days. Carolyn Barker, the Executive Housekeeper for UMDNJ, certifies that female employees are required to participate in inclement weather duties, including snow removal. *See* Cert. of C. Barker at ¶ 18. Ann Atkins and Aniel Leak, who are both female supervisors in the Environmental Services Department at UMDNJ, certify that both male and female employees are required to participate in snow removal and that they both personally participated in snow removal on January 27, 2009. *See* Ann Atkins at ¶ 6-8. & Cert. of A. Leak at ¶ 6-8. In addition, Gladys McGregor and Lilian Scott ,who are both female Environmental Services employees, certify that both male and female employees are required to participate in snow removal and that they both personally participated in snow removal on January 27, 2009. *See* Cert. of G. McGregor at ¶ 6-8. & Cert. of L. Scott at ¶ 6-8.

*See Celotex*, 477 U.S. at 324. As such, Plaintiff has failed to carry his burden to establish a prima facie case of discrimination with respect to his "disciplinary notice" theory and this Court need not engage in the pretext phase of the *McDonnell Douglas* analysis.

## 2. Legitimate Nondiscriminatory Reason[6]

After the prima facie stage, the burden shifts to the employer to offer some legitimate, non-discriminatory reason for its adverse employment action. This burden is not onerous. *Fuentes*, 32 F.3d at 763. "The employer need not prove that the tendered reason *actually* motived its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff*." Id.* (emphasis in original). "The defendant satisfies its burden at this step by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable [action]." *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 271 (3d Cir. 2010)(internal marks omitted). Here, even if Plaintiff had established a prima facie case, UMDNJ has presented sufficient evidence to meet its burden at this stage by offering an adequate nondiscriminatory reason for issuing the Disciplinary Notices.

Specifically, UMDNJ cites to Plaintiff's violation of its Inclement Weather Emergency Policy ("the Policy") as its reason for issuing the notices.[7] In short, Plaintiff received disciplinary notices for failure to either report for duty, or remain on, duty during declared inclement weather emergencies. Regardless of gender, the Policy requires essential workers to report to or remain at

---

[6] Because Plaintiff failed to establish a prima facie case of gender discrimination under either theory, the burden does not shift back to UMDNJ to provide a non-discriminatory reason for its conduct. That said, UMDNJ presented a non-discriminatory reason with respect to the issuance of disciplinary notices.

[7] A copy of the Policy is attached to the Cert. of L. Benjamin Allen in support of UMDNJ's motion as "Exhibit B." Plaintiff does not dispute its authenticity.

work during inclement weather emergencies. *See* Policy p. 1; *See also* Cert. of C. Barker at ¶¶ 4-10. For purposes of the Policy, Environmental Services workers are essential workers. *See* Policy p. 1; *See also* Cert. of C. Barker at ¶ 6. Environmental Services workers who report for an inclement weather emergency under the Policy are assigned tasks including, but not limited to, snow removal. *See* Cert. of C. Barker at ¶ 12. Environmental Services workers who do not report for an inclement weather emergency under the Policy are subject to discipline. *See* Policy p. 9. Plaintiff is an Environmental Services worker and concedes that the Plan applies to him. On December 19 and 20, 2008, UMDNJ declared an Inclement Weather Emergency.[8] *See* Cert. of C. Barker at ¶ 13. As an Environmental Services worker Plaintiff was required to report for duty, but failed to do so. *See* Cert. of C. Barker at ¶ 14. As a result, Plaintiff received a written discipline. *Id*. On January 27, 2009, UMDNJ declared an Inclement Weather Emergency. *See* Cert. of C. Barker at ¶ 15. That day, Plaintiff was ordered to remain at work after the end of his shift. *Id*. at ¶ 16. Plaintiff did not remain at work and, therefore, received a written discipline. *Id*. at ¶ 17.

This evidence, viewed in its entirety, provides a legitimate, nondiscriminatory reason for the adverse employment action.

---

[8] The Court will consider the alleged violations on December 19 and December 20 because it finds that they are substantially related to the alleged violations on January 27 and, in all likelihood, the EEOC would have investigated UMDNJ's practices on other Inclement Weather Days. However, the Court will not consider references to disparate treatment with respect to forms of physical labor other than snow shoveling as they are outside the scope of the EEOC investigation. *See Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). ("The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."). Additionally, in opposition to the instant motion Plaintiff references alleged retaliatory conduct by the UMDNJ for the first time. Neither Plaintiff's prior EEOC complaint, nor his Complaint in this action references retaliatory conduct. Plaintiff is limited to the allegations made in his pleadings and may not improperly amend his Complaint via subsequent submissions to the Court. *See e.g., Bell v. City of Philadelphia*, 275 Fed. Appx. 157, 160, (3d Cir. 2008) ("the proper procedure for plaintiffs to assert a new claim is the amend the complaint in accordance with Fed.R.Civ.P. 15(a)."). As such, Plaintiff's apparent retaliation claim is not properly before this Court as it is not contained in his pleadings.

3. **Pretext**

After a defendant offers a legitimate nondiscriminatory reason for the action, "the presumption raised by the prima facie case ... drops from the case.*" St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal marks omitted). At this point, the plaintiff "must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating ... cause of the employer's action." *Iadimarco*, 190 F.3d at 165-66. In other words, the plaintiff must provide evidence to "allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons [were] either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* at 166 (internal marks omitted). The burden of persuading the trier of fact that the alleged acts constituted unlawful discrimination remains with the plaintiff. *See St. Mary's Ctr.*, 509 U.S. at 507 (discussing burdens under *McDonnell Douglas* analysis). Because UMDNJ proffered a non-discriminatory reason for its decision, Plaintiff must point to evidence of implausibilities in the proffered reason such that a reasonable fact finder could conclude that UMDNJ's proffered reason was pretextual. *Kautz v. Met-Pro Corp*., 412 F.3d 463, 467 (3d Cir. 2005). Plaintiff's burden at this stage is a heavy one. *Id*.

Plaintiff has failed to direct the Court–and the Court has not uncovered[9]–any evidence tending to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for

---

[9] Again, the Court notes that it is not its responsibility to sift through Plaintiff's submissions in an attempt to find evidence which supports or provides better context for Plaintiff's claim. *See, e.g., Albrechtsen*, 309 F.3d at 436.

[the asserted] nondiscriminatory reasons.' " *Fuentes*, 32 F.3d at 765 (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992)). Here again, Plaintiff merely relies on the allegations of his complaint and points to no substantial evidence that contradicts or undermines UMDNJ's proffered legitimate reason. Because Plaintiff has not offered evidence of pretext, much less evidence "that would allow reasonable minds to conclude that the evidence of pretext is more credible than the [UMDNJ's] justifications," he has failed to carry *his* burden to show evidence in the record that UMDNJ's proffered reason for taking disciplinary action against him–namely, his failure to report to or remain at work on an Inclement Weather Emergency day–was pretext for reverse gender discrimination. *Kautz*, 412 F.3d at 467. As such, Plaintiff's motion for summary judgment is GRANTED.

## IV.     Conclusion

Plaintiff has failed to establish either a prima facie case of discrimination or, assuming he had, that UMDNJ's articulated legitimate reason was a pretext. Moreover, Plaintiff has come forth with no countervailing evidence that would indicate discriminatory motivation by UMDNJ. Therefore, the Court grants summary judgment to UMDNJ. An appropriate Order accompanies this Opinion.

 

                                                          *s/Esther Salas*

Dated: December 30, 2011                               **Esther Salas, U.S.D.J.**